IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INDIANA INSURANCE COMPANY, an
Indiana Corporation,

                    **Plaintiff,**

      **v.**

CE DESIGN LTD.,

                    **Defendant.**

Case No. 12 C 8839

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' Cross-Motions for Summary Judgment. For the reasons stated herein, Plaintiff Indiana Insurance Company's Motion for Summary Judgment is granted in part and denied in part, and Defendant CE Design Ltd.'s Motion for Summary Judgment is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Indiana Insurance Company ("Indiana") is an Indiana corporation with its principal place of business in Boston, Massachusetts. Defendant CE Design Ltd. ("CE Design") is an Illinois limited liability company. They dispute several coverage issues related to an insurance policy purchased from Indiana by non-party Matrix LS Inc. ("Matrix").

On September 29, 2004, Matrix applied for business insurance from Indiana, with a combined single limit of $1,000,000. In its application, Matrix described its business as "lead generating

office for mortgage brokers." Pl.'s. Rule 56.1 Statement of
Facts ¶ 14. Indiana sold Matrix Commercial Protector Policy
No. BOP9894530 (the "Policy"), which had an effective date of
September 28, 2004 and a termination date of September 28, 2005.
The total policy premium charged by Indiana for the Policy was
$501.00.

The Policy has several provisions that are relevant to this
litigation. Under Section A for "COVERAGES," the Policy
provides:

1. Business Liability

   a. We will pay those sums that the insured
   becomes legally obligated to pay as
   damages because of "bodily injury,"
   "property damage," "personal injury" or
   "advertising injury" to which this
   insurance applies. We will have the
   right and duty to defend the insured
   against any "suit" seeking those
   damages. However, we will have no duty
   to defend the insured against any
   "suit" seeking damages for "bodily
   injury," "property damage," "personal
   injury" or "advertising injury" to
   which this insurance does not apply. .
   . .

   b. This insurance applies:

      (1) To "bodily injury" and "property
      damage" only if:

         (a) The "bodily injury" or
         "property damage" is caused
         by an "occurrence" that takes
         place in the "coverage
         territory"; and

- 2 -

       (b)   The   "bodily   injury"   or
              "property   damage"  occurs
              during the policy period.

   (2)  To:

            . . .

       (b)   "Advertising injury" caused
              by an offense committed in
              the course of advertising
              your goods, products or
              services;

              but only if the offense was
              committed in the "coverage
              territory" during the policy
              period.

*Id.* ¶ 38. Section F of the Policy provides various definitions with respect to several key terms related to "Liability and Medical Expenses," including:

   1.   "Advertising injury" means injury rising out
       of one or more of the following offenses:

           . . .

      b.   Oral or written publication of
           material that violates a person's
           right of privacy;

           . . . .

*Id.* ¶ 30. The declarations page of the Policy provides coverage with limits of $1 million in liability and medical expenses and aggregate limits of $2 million for all non-product injury or damage. *Id.* ¶ 27.

CE Design initiated a class action lawsuit against Matrix in Lake County, Illinois on March 14, 2006 captioned *CE Design Ltd.*

*v. Matrix,* Case No. 05 L 269 (the "Underlying Action"). In the Complaint filed in that action (the "Underlying Complaint"), CE Design alleges that Matrix violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), engaged in common law conversion and violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/2, by sending unsolicited junk fax advertisements to Plaintiff and hundreds of others. It alleges that Matrix is responsible for sending more than 9.36 million unauthorized fax advertisements, including two specific faxes to CE Design without its permission on February 16, 2005 and February 24, 2005.

On April 16, 2010, the Circuit Court of Lake County, Illinois, certified a class in the Underlying Action consisting of all persons who, on or after July 22, 2004, "were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of [Matrix]." Pl.'s L.R. 56.1 Statement of Facts ¶ 43. CE Design has moved for summary judgment in the Underlying Action for damages of more than $318 million.

Indiana filed the present action seeking a declaration that it has no duty to defend or indemnify Matrix with respect to the Underlying Action. Before the Court are the parties' Cross-Motions for Summary Judgment.

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires this Court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  The court must review the record and draw all inferences from it in the light most favorable to the non-moving party.  *Sharer v. Atchison, T.& S.F.R. Co.,* No. 91 C 3585*,* 1992 U.S. Dist. LEXIS 7224 at *14 (N.D. Ill. May 14, 1992).

## III.  **ANALYSIS**

The parties agree that, with the exception of CE Design's estoppel argument, Michigan law should apply to this dispute. With respect to the estoppel argument, the parties both analyze the issue under Illinois law.  Courts in this Circuit honor reasonable choice-of-law stipulations in contract cases, and do not worry about conflict of laws unless the parties disagree on which state's law's apply.  *See, Lloyd v. Loeffler,* 694 F.2d 489, 495 (7th Cir. 1982); *Wood v. Mid-Valley Inc.,* 942 F.2d 425, 427

- 5 -

(7th Cir. 1991).  As such, the Court will apply the law of the states chosen by the parties.

### A.  CE Design's Estoppel Argument

CE Design claims that Indiana failed to disclose to Matrix conflicts of interest prior to appointing counsel to represent Matrix in the Underlying Action.  Under Illinois law, failure to disclose such conflicts can lead to an insurer being estopped from contesting coverage.  *See, Royal Ins. Co. v. Process Design Assocs.,* 582 N.E.2d 1234, 1242 (Ill. App. Ct. 1991).

CE Design filed the Underlying Action on July 12, 2005. Indiana sent Matrix a reservation of rights letter dated December 17, 2005 in which it reserved the right to contest coverage based on several grounds.  CE Design contends that nowhere in this letter did Indiana acknowledge that a conflict existed because Matrix would be in a better position if there was a finding of negligent conduct and Indiana would be in a better position if there was a finding of willful or intentional conduct.  In addition, the letter did not offer Matrix the opportunity to have independent counsel paid for by Indiana, instead stating that Indiana had retained the firm of Judge, James & Kujawa, Ltd., to represent Matrix.  As such, CE Design argues that Indiana cannot contest coverage now, and summary judgment should be awarded in its favor.

Indiana contests CE Design's estoppel argument for several reasons. First, it directs the Court to an amended reservation of rights letter to Matrix where it identified conflicts of interest expressly and notified Matrix that it could hire its own counsel to defend it in the Underlying Action. That would be compelling, except for the fact that the amended letter was sent on January 19, 2012, more than six years after the Underlying Action commenced. Upon learning of a possible conflict of interest between the insurer and the insured, it is the duty of the attorneys to notify the insured immediately of that fact. *See, Allstate Ins. Co. v. Keller,* 149 N.E.2d 482, 486 (Ill. App. Ct. 1958). Otherwise, the failure to do so could be attributed to the insurer's desire to strengthen its position in preparation for filing a declaratory judgment action contesting coverage, such as the present case. *See, id.* Indiana gives no explanation for the six-year delay in identifying the potential conflict of interest, and the Court fails to see the cause for such a delay. As such, the Court finds Indiana's reliance on its amended reservation of rights letter unpersuasive.

However, Indiana's other arguments on this issue fare better. The Court agrees with Indiana that CE Design is not the proper party to assert an estoppel argument on behalf of Matrix. Indiana owed no duty to defend to CE Design, and CE Design is not a representative of Matrix. Any problem with Indiana's late

- 7 -

conflict disclosure should have come from the insured party subject to the conflict, Matrix. The Court is unaware of any complaint by Matrix as to the representation it received.

In addition, an insurer is not estopped from raising coverage defenses unless the insured (Matrix) has been prejudiced by the conflict of interest or appointed counsel. *Utica Mut. Ins. Co. v. David Agency Ins., Inc.,* 327 F.Supp.2d 922, 928 (N.D. Ill. 2004); *Maryland Cas. Co. v. Peppers,* 355 N.E.2d 24, 29 (Ill. 1976). The Court sees no evidence that Matrix suffered such prejudice. As stated previously, there is no indication that Matrix was dissatisfied by the representation it received. Nor does CE Design even argue that Matrix suffered any prejudice as a result of that representation. It simply concludes that because the original reservation of rights letter did not describe any conflicts of interest or offer independent counsel, Indiana cannot now contest coverage. That is incorrect.

For these reasons, CE Design's Motion for Summary Judgment based on Indiana's conflicts of interest with Matrix is denied.

## B. Indiana's Duty to Defend

The parties then turn their discussion to whether Matrix's sending of unsolicited fax advertisements resulted in either "property damage" or "advertising injury" under the Policy. Indiana claims that such activity is not covered under the Policy, while CE Design claims that the faxes caused both

"property damage" and "advertising injury." Determining which party is correct requires an analysis of the Policy's language.

As stated previously, the parties agree that this contract dispute should be governed by Michigan law. Under Michigan law, an insurance policy must be enforced in accordance with its terms. *Nabozny v. Burkhardt,* 606 N.W.2d 639, 642 n.8 (Mich. 2000). Michigan courts will not hold an insurance company liable for a risk that it did not assume. *Id.* Ambiguous terms are construed in favor of the insured; however, where the terms of the contract are clear, courts will enforce the terms of the contract as written. *Id.* Furthermore, Michigan courts interpret the terms of an insurance contract in accordance with their "commonly used meaning." *Id.*

The determination of whether there is a duty to defend is "wholly dependent on the allegations set forth in the underlying complaint." *Auto-Owners Ins. Co. v. Tax Connection Worldwide,* No. 306860, 2012 Mich. App. LEXIS 2432 at *21 (Mich. Ct. App. Dec. 4, 2002). To resolve whether Indiana owes Matrix a duty to defend in the Underlying Action, the Court must decide whether the result of Matrix's unsolicited faxing activities constitutes an "advertising injury" or "property damage." Indiana owes Matrix such a duty if the allegations in the Underlying Complaint "*even arguably* come within the policy coverage." *Protective Nat'l Ins. Co. v. Woodhaven,* 476 N.W.2d 374, 375-76 (Mich. 1991).

The Court will thus start with an analysis of whether the alleged consequences of Matrix's unsolicited faxing activities qualify as "advertising injury" under the Policy. As one judge in this Circuit recognized, "[c]ourts have already spilled a great deal of ink over this issue." *Ace Mortg. Funding, Inc. v. Travelers Indem. Co. of Am.,* No. 1:05-cv-1631-DFH-TAB, 2008 U.S. Dist. LEXIS 18696 at *7 (S.D. Ind. Mar. 10, 2008). Unfortunately, the one court whose opinion would be determinative of this issue – the Michigan Supreme Court – is not among those that have spoken on the topic.

In the absence of a ruling from the Michigan Supreme Court, the Court must thus predict how that court would decide this issue. *Research Sys. Corp. v. IPSOS Publicite,* 276 F.3d 914, 925 (7th Cir. 2002). "Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Id.* (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.,* 165 F.3d 1087, 1090 (7th Cir. 1999)). In the absence of Michigan authority, the Court could consider decisions from other jurisdictions. *Lexington Insurance,* 165 F.3d at 1090.

Turning to the numerous courts that have addressed this issue previously, the Court is faced with a split in authority. *See, e.g., Penzer v. Transportation Ins. Co.,* 545 F.3d 1303, 1308

- 10 -

(11th Cir. 2008) (collecting cases); *Terra Nova Ins. Co. v. Fray-Witzer,* 869 N.E.2d 565, 573 (Mass. 2007) ("It is fair to say that even the most sophisticated and informed insurance consumer would be confused as to the boundaries of advertising injury coverage in light of the deep difference of opinion symbolized in these cases.") A number of courts, including two lower Michigan courts, conclude that the unsolicited sending of faxes in violation of the TCPA does fall under "advertising injury" coverage. Other courts, including the Seventh Circuit, hold that such faxing activities do not constitute "advertising injury." A brief explanation of each stance follows.

Indiana asks the Court to follow the rationale expressed twice by the Seventh Circuit in trying to predict how two other states' supreme courts would decide the issue. In *American States Ins. Co. v. Capital Associates of Jackson County, Inc.,* 392 F.3d 939 (7th Cir. 2004), the Seventh Circuit faced a nearly identical question under similar circumstances, but under Illinois law. In that case, the defendant was sued in state court for sending unsolicited fax advertisements in violation of the TCPA. *Id.* at 940. Its insurer filed a second action in federal district court seeking a declaratory judgment that the policy did not require a duty to defend or indemnify. *Id.* The policy at issue there included the same definition of advertising injury – an "oral or written publication of material that

- 11 -

violates a person's right of privacy." *Id.* The district judge
held that the unsolicited faxes invaded the recipients' privacy,
and that the insurer had to defend its insured under the policy.
*Id.* The Seventh Circuit reversed. It noted that no Illinois
court, trial or appellate, had issued any decision interpreting
the scope of "privacy" under an "advertising injury" clause. *Id.*
at 943. The court reasoned that the two principal meanings of
"privacy" are secrecy and seclusion. *Id.* at 941. Someone who
wishes to conceal something asserts a claim to privacy in the
sense of secrecy, whereas someone who wants to stop people from
bothering him asserts a claim to privacy in the sense of
seclusion. *Id.* The court explained that the structure of the
policy (particularly the requirement that such injury be caused
by the "publication" of material in violation of a privacy
interest) implied strongly that the coverage was limited only to
secrecy interests, not seclusion interests. *Id.* at 942-43. The
court thus found that an "advertising injury clause" of the type
at issue here does not cover the normal consequences of junk
advertising faxes. *Id.* at 943. As such, the Court ruled that
the insurer owed no duty to defend. *Id.*

The Illinois Supreme Court tackled the same question two
years later, but rejected the Seventh Circuit's analysis. *Valley
Forge Ins. Co. v. Swiderski Elecs., Inc.,* 860 N.E.2d 307 (Ill.
2006). The Illinois Supreme Court disagreed with the Seventh

Circuit's conclusion that the provision was limited only to secrecy interests, and decided that the conclusion reached in *American States* was contrary to Illinois's policy of giving undefined contract terms (such as "publication" and "material") their plain and ordinary meanings. *Id.* at 378-79. Instead, in an effort to afford the relevant undefined contract terms their ordinary meanings, the Illinois Supreme Court turned to their dictionary definitions and concluded that under Illinois law, "advertising injury" policy provisions cover TCPA claims. *Id.* at 366-67.

That decision, however, did not deter the Seventh Circuit from standing by the rationale it employed in *American States* three years later, when it was tasked with answering the same question under Iowa law in *Auto-Owners Insurance Co. v. Websolv Computing, Inc.,* 580 F.3d 543 (7th Cir. 2009). Again, as it had in *American States,* the Seventh Circuit noted that Iowa had no case law on point. *Id.* at 549. The court acknowledged that the Illinois Supreme Court disagreed with its decision in *American States*, but concluded that despite the Illinois court's rejection, Iowa would follow the rationale it announced in *American States* because the most natural reading of the policy terms in the context of related language was to exclude coverage for seclusion violations. *Id.* at 550. Courts in other jurisdictions have employed rationale similar to that used by the

- 13 -

Seventh Circuit when faced with similar policy language. *See, e.g., Resource Bank Shares Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631, 640-42 (2005).

As mentioned, however, there is a split in authority. A number of cases have concluded, as the Illinois Supreme Court did in *Valley Forge,* that the Policy language defining "advertising injury" makes no distinction as to the type of privacy insured. Most notably, two recent Michigan court decisions have followed this view. In *Auto-Owners Insurance Co. v. Tax Connection Worldwide, LLC,* No. 306860, 2012 Mich. App. LEXIS 2432 (Mich. App. Ct. Dec. 4, 2012), the Michigan Court of Appeals was again faced with a similar situation. The plaintiff insurer filed suit in Michigan state court seeking a declaratory judgment that it had no duty to defend or indemnify the defendants in an underlying TCPA action. *Id.* at *1-2. The underlying complaint alleged that the insured had sent unsolicited advertisements that had damaged the recipients. *Id.* at *12.

The definition of "advertising injury" at issue was the same as in the present case. *Id.* at *8-9. The court examined the policy language with respect to what constituted "advertising injury" in accordance with Michigan's principles of contract construction. It did not employ the rationale described by the Seventh Circuit that differentiated between secrecy and seclusion privacy. Instead, following Michigan's policy of giving

- 14 -

contractual terms their common meaning, the court looked to the dictionary definitions of undefined terms such as "publication," "privacy" and "material" to determine the meaning of "advertising injury." *Id.* at *9-12. The court found that the TCPA, in making it unlawful for a person to use a fax machine to send an unsolicited advertisement, involves an interest in and protection of "some sort of privacy right." *Id.* at *12. It thus concluded:

> At its most basic level, the sending of unsanctioned advertising facsimiles in this case falls within the coverage language of an "advertising injury" as broadly defined in the policy at issue. Such a finding is consistent with other state Supreme Court decisions called upon to interpret the exact same language as the policy language at issue.
>
> . . .
>
> In sum, comparing the allegations in the TCPA complaint with the insurance Policy at issue's "advertising injury" provision, we find that the Policy affords coverage for the underlying lawsuit. The plain meaning of the undefined Policy terms leads to such a conclusion as do the unbinding but persuasive analyses in [other state supreme court decisions]. To the extent that the undefined terms are ambiguous, we construe them in favor of the insured.

*Id.* at *12-14 (citations omitted). Interestingly, the Michigan Supreme Court earlier this year denied the insurer's application to appeal the ruling because it was not persuaded that the questions presented in the appeal should be reviewed by the court. *See, Auto-Owners Inc. Co. v. Tax Connection Worldwide,*

- 15 -

*LLC,* 831 N.W.2d 454 (Mich. 2013). It did so despite that fact that one of its members, Justice Markman, dissented based on the same rationale put forth by the Seventh Circuit in *American States* and *Websolv*. *See, id.* at 454-55. Just two months ago, the Michigan Supreme Court denied a motion to reconsider the denial of that appeal. *Auto-Owners Inc. Co. v. Tax Connection Worldwide, LLC,* 835 N.W.2d 577, 578 (Mich. 2013).

*Tax Connection* is not the only Michigan case to hold that the sending of unsanctioned advertising faxes falls within the coverage language of an "advertising injury." Just a few months earlier, a Michigan trial court reached a similar conclusion. In *State Farm v. Kapraun,* Case no. 10-94869 (April 23, 2012), the court faced the question of whether sending facsimile advertisements qualified as "advertising injury" under the same policy language. *Id.* at 1. After examining the split in authority on the subject, it rejected explicitly the rationale advanced by the Seventh Circuit in *American States* and *Websolv.* Instead, the court concluded: (1) the policy language in question does not compel a determination that only the right to secrecy, and not the right to seclusion, is covered by the policy; (2) the language in question was chosen by the insurer, and it could have chosen more restrictive language if it wanted to limit coverage to only protect secrecy interests; and (3) the

insurer's strongest authority, *American States,* was "significantly undermined" by later decisions. *Id.* at 8.

With all due respect to the thoughtful analysis advanced by our Circuit Court applying other states' law in *American States* and *Websolv,* the Court believes that it is more likely that the Michigan Supreme Court would agree with the two lower Michigan courts that have ruled on this precise issue and found independently that unsolicited facsimile advertising falls under the coverage language of "advertising injury." In the absence of persuasive indications that the Michigan Supreme Court would decide the case differently, decisions of Michigan's appellate court control. *Lexington Insurance,* 165 F.3d at 1090. Here, unlike the situation the Seventh Circuit faced in both *American States* and *Websolv* where there was no lower court authority, two lower courts applied Michigan law to rule on this exact issue and one of them, *Tax Connection*, is a recent appellate court decision. Both Michigan court decisions came down after *American States* and *Websolv*, and indeed, *Kapraun* acknowledged and analyzed those decisions explicitly before ultimately finding them unpersuasive under Michigan law.

The Court notes that it is not simply the existence of these two lower court decisions that lead to this conclusion, but also the fact that the Court finds no flaw in those cases' application of Michigan law. Michigan, like Illinois, seeks to give

undefined contract terms their plain meaning. In applying that principle, the Michigan Court of Appeals chose to approach the problem in the same manner the Illinois Supreme Court did in *Valley Forge* – by looking to the dictionary definitions of the key undefined contract terms and using them to determine the breadth of the "advertising injury" clause. Furthermore, Indiana fails to put forth any persuasive indications that the Michigan Supreme Court would decide the case differently.

Indiana argues that because Justice Markman's dissent in the Michigan Supreme Court's denial of appeal in *Tax Connection* "is the *only* pronouncement by a Michigan Supreme Court justice on the issue, [it] should be afforded substantial weight by a court in its predictive role." Pl.'s Mem. in Support of Summ. J. at 17. Indiana offers no legal support for the proposition that a single justice dissenting from a denial of leave to appeal can be deemed to speak for an entire tribunal. Indeed, the Court reads no more significance into Justice Markman's dissent than it does the fact that the Michigan Supreme Court twice chose to decline taking the *Tax Connection* case up on appeal.

Indiana also argues that Michigan's recognition of the "last antecedent rule" for statutory and contractual interpretation indicates there is no coverage for "advertising injury." The last antecedent rule "provides that a modifying or restrictive word or clause contained in a statute is confined solely to the

immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation." *Stanton v. City of Battle Creek,* 647 N.W.2d 508, 511 (Mich. 2002). The Policy covers injury arising out of "[o]ral or written publication of material that violates a person's right of privacy." Pl.'s Statement of Facts ¶ 30. According to the rule, the phrase "violates a person's right of privacy" modifies the last antecedent of the prior phrase, "material." Indiana argues that the Michigan Supreme Court would thus interpret the Policy to cover injuries arising out of publication of material only if the material violates a person's privacy, and to do so, the material would have to contain confidential information and violate the victim's right to secrecy. This argument is based on the secrecy/seclusion distinction this Court has already decided would not be employed by the Michigan Supreme Court. The last antecedent rule could be employed equally effectively to refer to material that violates a person's seclusion, such as unsolicited faxes.

Indiana then makes a number of factual arguments as to why it should not have to defend this action. For example, it claims that the faxes were sent not on Matrix's behalf, but on behalf of its clients. It also argues that Matrix was in the business of advertising, and thus excluded from coverage. Such arguments may be appropriate to dispute that Indiana has a duty to *indemnify*,

but under Michigan law, they are not appropriate to negate a duty
to defend.

In Michigan, "The duty to indemnify arises only after
liability is found on the underlying claim – that is, after the
insured suffers a loss – and it is determined that the loss
suffered is covered by the terms of the policy." *Tax Connection,*
2012 Mich. App. LEXIS 2432 at *8. The duty to defend, however,
is broader than the duty to indemnify. *Id.* at *6. As stated
earlier, the determination of whether there is a duty to defend
is wholly dependent on the allegations set forth in the
underlying complaint. *Id.* at *21. As the Michigan Supreme Court
explained:

> The duty of the insurer to defend the
> insured depends upon the allegations in the
> complaint of the third party in his or her
> action against the insured. This duty is
> not limited to meritorious suits and may
> even extend to actions which are groundless,
> false or fraudulent, so long as the
> allegations against the insured *even
> arguably* come within the policy coverage. .
> . . In a case of doubt as to whether or not
> the complaint against the insured alleges a
> liability of the insurer under the policy,
> the doubt must be resolved in the insured's
> favor.

*Protective Nat'l Ins. Co. v. Woodhaven,* 476 N.W.2d 374, 375-76
(Mich. 1991) (quotations omitted). It is thus the underlying
claim that determines an insurer's duty to defend, and "it is
irrelevant that the insurer may get information from the insured,
or from any one else, which indicates, or even demonstrates, that

the injury is not in fact 'covered.'" *Dochod v. Cent. Mut. Ins. Co.,* 264 N.W.2d 122, 124 (Mich. Ct. App. 1978) (quoting *Lee v. Aetna Cas. & Sur. Co.,* 178 F.2d 750, 751 (2d Cir. 1949)); *see also, Upjohn v. Aetna Cas. & Sur. Co.,* 768 F.Supp. 1186, 1196 (W.D. Mi. 1990) ("In making this threshold determination, the true merit of the underlying claims – that is, facts outside the four corners of the underlying claims that might negate coverage – are not taken into account."). The Underlying Complaint here alleges that Matrix had a practice of faxing unsolicited advertisements, that it sent thousands of faxes throughout the United States, and that by sending those faxes, Matrix forced class members to pay for its advertising campaign. Pl.'s Rule 56.1 Statement of Facts Ex. 7 ¶¶ 1, 11, 13, 48. In light of the Court's conclusion as to the scope of the "advertising injury" provision, these allegations of the Underlying Complaint demonstrate the TCPA claim at least arguably falls under the terms of the Policy.

Indiana directs this Court to a variety of evidence and testimony supporting its arguments that Matrix was not advertising its own products or services, that it was in the advertising business, and that it was providing professional services as defined by the Policy. The Court notes that some of that evidence, at first blush, appears quite convincing. However, all of that evidence would be used more appropriately to

challenge Indiana's duty to indemnify. Since the Underlying Action has not been resolved yet, and there has been no determination as to whether Matrix is liable in that litigation, the Court finds that it would be premature to rule on whether Plaintiff owes Matrix a duty to indemnify. *See, Wakefield Leasing Corp. v. Transamerica Ins. Co.,* 539 N.W.2d 542, 544 (Mich. Ct. App. 1995). Indeed, Indiana recognizes that arguments based on the discovery record in the Underlying Action as to the duty to indemnify are premature, as it seeks to "reserve[] the right to raise those arguments, upon conclusion of the Underlying Action, should the present motion be denied in any respect." Pl.'s Mem. in Support of Summ. J. at 27 n. 10.

In sum, the Court believes that the Michigan Supreme Court would likely follow those courts, including its lower courts, that have concluded that the Policy language of the "advertising injury" provision is sufficiently broad to encompass the conduct alleged in the Underlying Complaint. As such, Indiana has a duty to continue defending Matrix in the Underlying Action. It is therefore unnecessary for the Court to examine whether the conduct alleged in the Underlying Complaint would also constitute "property damage," as the Court has already found that Indiana owes a duty to defend.

### C. Policy Limit

Indiana asks that if the Court concludes that it owes a duty to defend Matrix in the Underlying Action, the Court should declare that the limits of Indiana's indemnity obligation are capped at $2 million in the aggregate. CE Design argues that such a determination would be inappropriate at this stage, as any ruling would simply be an advisory opinion. The Court disagrees, as several cases in this district have addressed, in declaratory judgment actions, issues of coverage limits even though the underlying cases had not yet been resolved. *See, American Home Ins. v. Martin,* No. 92 C 1377, 1992 U.S. Dist. LEXIS 7357 at *6-9 (N.D. Ill. May 28, 1992) (collecting cases). As such, the Court will examine the limits.

The parties read the Policy very differently as to the limits of coverage. Put simply, CE Design reads the limit applicable to "advertising injury" as being $1,000,000 *per person*. CE Design claims that the provision of the Policy setting the aggregate limit of coverage does not apply to "advertising injury." Thus, CE Design claims, there is no cap on the total amount that Indiana might be responsible for paying, only as to how much it might have to pay per person. It bases this argument on two clauses in the Policy. First, it looks to section D(2):

D.   LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE

. . .

2.   The most we will pay for the sum
of all damages because of all:

a.   "Bodily injury," "property damage"
and medical expenses arising out
of any one "occurrence"; and

b.   "Personal injury" and "advertising
injury" sustained by any one
person or organization;

is the Liability and Medical Expenses
limit shown in the Declarations. . . .

Pl.'s Rule 56.1 Statement of Facts Ex. 5.  The second provision
CE Design relies upon is D(4), which is entitled "Aggregate
Limits."  *Id.*  CE Design states that there is no reference to
"advertising injury" in this aggregate limits section, a fact
that Indiana must have recognized since it included language in
the next year's policy to include "advertising injury"
explicitly.  CE Design thus concludes that because the only
specific limitation in the Policy is that found in D(2), which
limits coverage amounts only per person (or organization) but not
in the aggregate, that no such aggregate limit exists for
"advertising injury."  Such conclusion, however, is mistaken once
the insurance agreement is examined in its entirety.

Under Michigan law, an insurance contract should be read as
a whole and meaning should be given to all of its terms.  *Royal
Prop. Group, LLC v. Prime Ins. Syndicate, Inc.,* 706 N.W.2d 426,

432 (Mich. Ct. App. 2005). "[T]he policy application, declarations page of policy, and the policy itself construed together constitute the contract." *Id.* Matrix's policy application indicates it was seeking $1 million in coverage. Pl.'s Rule 56.1 Statement of Facts ¶ 13. More importantly, it is undisputed that the declarations page of the Policy provides coverage with limits of $1 million in liability and medical expenses, and an aggregate limit of $2 million for all injury or damage other than "products/completed operations hazard." *Id.* ¶ 27. "Advertising injury" is listed in the Policy as a category of "liability and medical expenses." *Id.* ¶ 30. The declarations page also states explicitly that "Except for Fire Legal Liability, each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period." ECF No. 35-2, Ex. 5 at 10. The Policy itself also makes it clear that the amounts in the declarations are the limits available to Matrix. Section D(1) of the Policy states that "The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of: (a) Insureds; (b) Claims made or 'suits' brought; or (c) Persons or organizations making a claim or bringing 'suits'." *Id.*

Thus, reading the contract as a whole including the application, declaration and Policy, makes it clear that CE Design's interpretation is far broader than the contract allows

on its face. "Advertising injury" is listed in the Policy as a category of "liability and medical expenses." The Policy in section D(2) states that the most Indiana will pay as a result of an "advertising injury" sustained by any one person or organization is the limit shown on the declaration for "liability and medical expenses," or $1 million. The declaration page also states that the aggregate limit for "all other injury or damage" besides that sustained "under products/completed operations hazard" is $2 million. The declaration explains that each paid claim for such coverage reduces the amount of insurance Indiana will provide. Thus, the contract establishes that the maximum limit one person or organization can recover due to sustaining an "advertising injury" is $1 million, and the aggregate limit for which Indiana is responsible is $2 million regardless of the number of advertising injury claims.

The absence of "advertising injury" being discussed in the aggregates limit section of the Policy does nothing to change this reading of the Policy, as it states explicitly that the "Declarations *and* the rules below fix the most [Indiana] will pay. . . ." (emphasis added). *Id.* (emphasis added). As one sister court explained in a case where a plaintiff argued that the policy did not set a limit of coverage despite such a limit being found in the declarations page:

> The Declarations thus fix the maximum amount
> of coverage, and Endorsement #2 does not

- 26 -

change that maximum amount. The fact that the "Limits of Insurance" section uses the word "AND" does not afford additional coverage beyond the limits of the Declarations. Rather the sentence, using the word "AND," means what it clearly and unambiguously states: the limitations of coverage are subject to *both* the limitations found in the Declarations *and* the "rules below." Under Liberty's construction of the Policy, if there were any scenario that the "rules below" did not address, then there would be no limit to the coverage. This is not the case under the plain reading of the Policy because the liability limits are also (AND) subject to the limits in the Declarations, in this case $1,000,000. Quite obviously, there may be any number of situations – contemplated by the ISO "drafters" or not – which the "rules below" may not address. However, the fact that the "rules below" do not address a given situation does not remove the application of the liability limits contained in the Declarations because the limit of coverage is *also* subject to the limits indicated there.

*Liberty Mut. Ins. Co. v. Scottsdale Ins. Co.,* No. 01-2932, 2001 WL 1629239, at *4 (D. S.C. Dec. 14, 2001). Similarly, under both Michigan law and the express language of the Policy itself, the absence of an explicit discussion of "advertising injury" in the "Aggregate Limit" section of the Policy does not change the fact that aggregate limit for advertising injury is provided in the declaration page. That Indiana later amended the "Aggregate Limit" section is of no consequence, as the language of the insurance agreement at issue in this case is clear and unambiguous on its face as to the aggregate limit of the policy.

- 27 -

In sum, the Court finds that pursuant to the Policy, the most Indiana could owe Matrix is $2 million coverage in the aggregate.

## IV.   CONCLUSION

For the reasons stated herein, Indiana's Motion for Summary Judgment [ECF No. 33] is granted in part and denied in part. Indiana's request for a declaration that Indiana has no duty to defend, and therefore no duty to indemnify, Matrix in the Underlying Action is denied. Indiana's request for a declaration that the Policy has $2 million in aggregate limits is granted.

CE Design's Cross-Motion for Summary Judgment [ECF No. 37] is granted in part and denied in part. The Court finds that Indiana does owe Matrix a duty to defend in the Underlying Action. To the extent CE Design's Cross-Motion sought further relief, it is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date:12/20/2013

- 28 -